UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| HUNTER TECHNOLOGY CORPORATION. d/b/a SPARTON MILPITAS, ) ) ) | |
| Plaintiff, ) ) ) | Judge Marvin E. Aspen Case No. 1:20-cv-4858 |
| v. ) ) ) | |
| OMEGA GLOBAL TECHNOLOGIES, INC., ) ) ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

MARVIN E. ASPEN, District Judge:

Presently before us is Defendant Omega Global Technologies, Inc.'s Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction. (Motion (Dkt. No. 16).) Plaintiff Hunter Technology Corporation d/b/a Sparton Milpitas filed this breach of contract lawsuit in the Circuit Court of Cook County, Illinois, alleging that Defendant sold it counterfeit goods. (Compl. (Dkt. No. 1).) Defendant removed this case to federal court arguing that complete diversity exists under 28 U.S.C. § 1441. (*Id.*) For the reasons set forth below, we deny Defendant's motion to dismiss.

**BACKGROUND**

The following facts are culled from the Complaint unless otherwise specified.

On June 26, 2018, Plaintiff issued a Purchase Order to Defendant for certain diodes to be delivered. (*Id.* ¶ 6.) That Purchase Order included the following terms:

> This Order and the performance of the parties hereunder shall be construed in accordance with and governed by laws of the State of Illinois. [Buyer] and Seller irrevocably submit to the jurisdiction of the Courts of the State of Illinois and the United States District Court for the *Northern District of Illinois* in any action or proceeding

>arising out of or relating to the Order, and waive the defense of an inconvenient forum to the maintenance of such action or proceeding.

(General Provisions for Subcontracts and Purchase Orders ("Purchase Order Provisions") (Dkt. No. 1-1) at 9 (emphasis added).) It also contained a provision that contemplated potential conflicting terms:

>Any acknowledgement that contains terms in addition to, or inconsistent with, the terms and conditions of this Order, or a rejection of any term or condition of this Order, shall be deemed to be a counter-offer to Buyer and shall not be binding upon Buyer unless acceptance thereof is made in writing by Buyer; however, performance by Seller, in the absence of written acceptance of such counter-offer by Buyer, shall constitute Seller's acceptance of this [Purchase] Order and all its terms and conditions.

(Purchase Order Provisions at 9.)

Then, on October 19, 2018, Plaintiff received a shipment from Defendant with half of the diodes. (Compl. ¶ 10.) Four days later, Defendant issued an invoice for the first shipment that included more terms and conditions, some that contradicted the Purchase Order's terms. (*Id.* ¶ 11.) One differing term was a forum selection clause:

>These Terms and Conditions shall be governed, construed and interpreted in all respects in accordance with the internal laws of California in the United States of America, without reference to conflict of laws principles. Both parties agree that any and all proceedings relating to the sale of the Products to Buyer or these Terms and Conditions shall be maintained in the United States District Court for the *Northern District of California* (unless such Court lacks subject matter jurisdiction, in which case any such proceeding shall be brought in the state courts of general jurisdiction in Santa Clara County in the State of California), which courts shall have exclusive jurisdiction for such purpose, and Buyer hereby irrevocably consents to such jurisdiction.

(Invoice No. 2496 (Dkt. No. 16-2) at 23 (emphasis added).)

On initial receipt of the diodes, Plaintiff believed that they conformed with the Purchase Order's specifications and paid the corresponding amount due. (*Id.* ¶ 12; Compl. ¶ 14.) On

2

December 18, 2018, Plaintiff received the second half of the diodes that it had ordered. (Compl. ¶ 12.) On further inquiry, Plaintiff learned that it received 400,600 non-conforming counterfeit diodes from Defendant. (*Id.* ¶ 15.) Plaintiff incurred costs in excess of $750,000 as a result of Defendant's alleged breach of contract. (*Id.* ¶¶ 17, 21.)

## LEGAL STANDARD

If a court lacks personal jurisdiction over a party to an action, it must dismiss the case as to that party. Fed. R. Civ. P. 12(b)(2). A complaint need not include facts alleging personal jurisdiction, but when a defendant moves to dismiss under Rule 12(b)(2), the plaintiff bears the burden of demonstrating personal jurisdiction over the defendant. *N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 491 (7th Cir. 2014); *Purdue Research Found. v. Sanofi–Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). In determining whether personal jurisdiction exists, we accept all well-pleaded allegations in the complaint as true. *Felland v. Clifton*, 682 F.3d 665, 672 (7th Cir. 2012). The court may consider affidavits or other evidence in opposition to or in support of its exercise of jurisdiction. *Purdue Research*, 338 F.3d at 783. "[O]nce the defendant has submitted affidavits or other evidence in opposition to the exercise of jurisdiction, the plaintiff must go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction." *Id.* We resolve factual disputes in the plaintiff's favor, but unrefuted assertions by the defendant will be accepted as true. *GCIU–Emp'r Ret. Fund v. Goldfarb Corp.*, 565 F.3d 1018, 1020 n.1 (7th Cir. 2009).

## ANALYSIS

A federal court in Illinois has personal jurisdiction over a plaintiff's state law claims if an Illinois court would have jurisdiction. Fed. R. Civ. P. 4(k)(1)(A); *see also Purdue Research*, 338 F.3d at 779. The Illinois long-arm statute governs the exercise of personal jurisdiction by an

Illinois court over nonresidents. *Russell v. SNFA*, 2013 IL 113909 ¶ 29 (2013). "A state's exercise of personal jurisdiction is also subject to the demands of the Fourteenth Amendment's due process clause." *uBID, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 425 (7th Cir. 2010). "Thus, the statutory question merges with the constitutional one—if Illinois constitutionally may exercise personal jurisdiction over a defendant, its long-arm statute will enable it to do so." *N. Grain Mktg.*, 743 F.3d at 492.

"A forum state's courts may not exercise personal jurisdiction over a nonconsenting, out-of-state defendant unless the defendant has 'certain minimum contacts with it such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *N. Grain Mktg.*, 743 F.3d at 492 (quoting *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945)). There are two types of personal jurisdiction: "general" jurisdiction and "specific" jurisdiction." *Bristol–Myers Squibb Co. v. Super. Ct. of Cal., S.F. Cty.*, 137 S. Ct. 1773, 1780, (2017); *see also Daimler AG v. Bauman*, 571 U.S. 117, 121 (2014). "Waiving objections to personal jurisdiction via a valid jurisdictional provision renders any examination of the defendant's contacts with the forum state unnecessary." *LKQ Corp. v. Thrasher*, 785 F. Supp. 2d 737, 742 (N.D. Ill. 2011); *see Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1292 n.4 (7th Cir. 1989) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 n. 14 (1985) ("[a] valid forum-selection clause, even standing alone, can confer personal jurisdiction.")).

4

1.     **The Purchase Order's Forum Selection Clause Controls**

This motion comes down to which[1] forum selection clause controls, or whether they cancel one another out because a forum-selection clause can confer personal jurisdiction. Therefore, this inquiry resides in a contract formation analysis. A valid contract requires an offer, acceptance, and consideration. *Van Der Molen v. Washington Mut. Fin., Inc.*, 359 Ill. App. 3d 813, 823 (1st Dist. 2005).

The relevant timeline of events regarding the instant contract is that Defendant received Plaintiff's purchase order, raised no objection to its terms and conditions, partially performed by having fulfilled one-half of the order, and then four days later issued an invoice. Thereafter, Plaintiff paid that invoice, and then Defendant completed the performance by delivering the remaining goods. Defendant argues that its acceptance occurred when it issued an invoice four days after it partially performed, and so the invoice's terms are either part of the contract or competing terms.

Partial performance evidences acceptance and therefore contract formation. *See* 810 ILCS 5/2-204 ("A contract for sale of goods may be made in any manner sufficient to show agreement."); *see also Armond Cassil Co. v. Atl. Track & Turnout Co.*, No. 89 C 3294, 1991 WL 139865, at *4 (N.D. Ill. July 22, 1991) *(*"The acknowledgment of the purchase order and the subsequent partial performance are evidence of an acceptance"); *Calo, Inc. v. AMF Pinspotters,*

---

[1] As laid out above, the Purchase Order's forum selection clause selected "Courts of the State of Illinois and the United States District Court for the Northern District of Illinois." (Purchase Order Provisions at 9.) The forum selection clause in Defendant's invoice, however, identified the "United States District Court for the Northern District of California (unless such Court lacks subject matter jurisdiction, [then] . . . the state courts of general jurisdiction in Santa Clara County in the State of California)." (Invoice No. 2496 at 23.)

*Inc.*, 31 Ill. App. 2d (1st Dist. 1961) (recognizing that an enforceable contract may be demonstrated with proof of offer and acceptance or partial performance).

Here, Defendant accepted the Purchase Order's terms by partial performance and, therefore, formed a binding contract. Defendant's invoice (that contained the different forum selection clause) was issued four days after Defendant's partial performance constituted acceptance and contract formation. It would be counterintuitive to hold that Defendant's invoice had a retroactive impact. Therefore, we find that the Purchase Order constituted Plaintiff's offer, the performance of shipping the goods constituted Defendant's acceptance, and consideration was provision of the diodes in exchange for a promise of payment. The Purchase Order is an enforceable contract as pleaded and is unaltered by the invoice issued after partial performance.[2]

Even if we were to construe Defendant's invoice as a competing form under a UCC Battle of the Forms[3] analysis, that would not change the outcome. Rather, the invoice would merely be construed as a counteroffer that Plaintiff never accepted. *See* UCC § 2-207(1). Plaintiff contemplated this scenario in its offer (*i.e.*, the Purchase Order). In its offer, it provided that it would construe subsequent conflicting forms as a counteroffer that it would only accept in writing. (*See* Purchase Order Provisions at 9.) Defendant has not cited a single writing made by Plaintiff that could be construed as accepting the terms of the invoice's counteroffer. The lack of

---

[2] We do not opine on whether the outcome would have differed had the invoice been delivered together with the first diode shipment.

[3] "'Battle of the forms' refers to the not uncommon situation in which one business firm makes an offer in the form of a preprinted form contract and the offeree responds with its own form contract. At common law, any discrepancy between the forms would prevent the offeree's response from operating as an acceptance." *Northrop Corp. v. Litronic Indus.*, 29 F.3d 1173, 1174 (7th Cir. 1994).

a written acceptance to Defendant's invoice's additional terms bolsters our conclusion that the invoice's differing terms have no contractual force.

Accordingly, the forum selection clause in the Purchase Order controls as part of the enforceable contract to which the parties mutually assented.

Defendant next argues that this forum selection clause should be rendered unenforceable because it does not have mandatory and exclusive language. "[W]here venue is specified with mandatory or obligatory language, the clause will be enforced; where only jurisdiction is specified, the clause will generally not be enforced unless there is some further language indicating the parties' intent to make venue exclusive." *Muzumdar v.Wellness Int'l Network, Ltd*., 438 F.3d 759, 762 (7th Cir. 2006). We hold that the Purchase Order's forum selection clause is enforceable because it mandates lawsuits be brought exclusively in Illinois or the Northern District of Illinois for the following reasons. First, the clause states, in part, that the Purchase Order and the performance thereunder "*shall* be construed in accordance with and governed by laws of the State of Illinois." (Purchase Order Provisions at 1 (emphasis added).) It also provided that the parties "irrevocably *submit* to the jurisdiction of the Courts of the State of Illinois and the United States District Court of the Northern District of Illinois in *any* action or proceeding arising out of or relating to the [Purchase] Order." (*Id.* (emphasis added).) Moreover, the clause provided that the parties "waive the defense of an inconvenient forum to the maintenance of such action or proceeding." (*Id.*) Therefore, the forum selection clause contained in the Purchase Order is enforceable at law and confers personal jurisdiction before us. *See, e.g.*, *TruServ Corp. v. Flegles, Inc*., 419 F.3d 584, 589 (7th Cir. 2005) (quoting *Heller Fin., Inc. v. Midwhey Powder Co*., 883 F.2d 1286, 1292 n. 4 (7th Cir. 1989) ("Obviously, a valid forum-selection clause, even standing alone, can confer personal jurisdiction.").

7

## CONCLUSION

For the foregoing reasons, we deny Defendant's motion to dismiss. (Dkt. No. 16.) The status hearing set for December 17, 2020, is stricken and reset to February 4, 2021, at 10:30 a.m. It is so ordered.

_____
Honorable Marvin E. Aspen
United States District Judge

Dated: December 3, 2020
Chicago, Illinois

8